UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

KEITH JAMES COLLETTI            CIVIL ACTION NO. 6:10-cv-01099

VERSUS                          MAGISTRATE JUDGE HANNA

TIGER TUGZ, LLC and          BY CONSENT OF THE PARTIES
K & K MARINE, LLC

## MEMORANDUM  RULING

This case comes before the Court by consent, pursuant to 28 U.S.C. § 636, for disposition.   Pending is a motion for summary judgment filed by defendant Mississippi Louisiana Dirt Company, L.L.C. ("MLDC"). (Rec. Doc. 87). The motion is opposed.  Considering the evidence, the law, and the arguments of the parties, and for the following reasons, the motion is DENIED.

## I.    FACTUAL  BACKGROUND

On January 4, 2010, the plaintiff, Keith James Colletti, was employed by defendant Tiger Tugz, LLC as a deckhand.  On that day, he was assigned by his employer to work on Tiger Tugz's vessel the M/V MISS CLAIRE and to build tow with six barges that Tiger Tugz was contracted to transport from Grand Isle to West

Pearl River.  It is an undisputed fact that the six barges were owned by defendant MLDC.  One of those barges was designated as the MDL 300B.

When purchased by MLDC, the MDL 300B was an open hopper barge with coaming, or a short wall, around a portion of the hopper.  In October 2009, Leonard Scarborough, an employee of defendant Cahaba Disaster Recovery, L.L.C., removed part of the MDL 300B's coaming to facilitate the unloading of rocks being transported in the barge.  A wire handrail was strung across the area where the coaming was removed.

The MDL 300B was used to take two loads of stone to Grand Isle.  After the second unloading, Cahaba contacted Tiger Tugz and requested that the MDL 300B and five other barges be transported from Grand Isle to West Pearl River.

On January 4, 2010, the MISS CLAIRE, with Mr. Colletti as deckhand, and another tug owned by Tiger Tugz arrived at the location where the barges were moored.  Mr. Colletti and another deckhand began to prepare the barges for departure. Mr. Colletti assisted the other deckhand in starting a pump so that water could be removed from the MDL 300B.  When the pump started, Mr. Colletti was standing in front of the discharge nozzle.  To avoid getting wet, he moved quickly out of the way but lost his balance.  He reached for the wire handrail, but he alleges that the wire was not taut and failed to prevent him from falling into the hopper.

Mr. Colletti claims that he was injured in the fall, and he has asserted claims against MLDC, Cahaba, Tiger Tugz, and others.  MLDC now seeks summary judgment in its favor with regard to Mr. Colletti's unseaworthiness and negligence claims.  MLDC argues, first, that a seaman such as Mr. Colletti who is employed by and crewing a tug cannot assert an unseaworthiness cause of action against a barge owned by a non-employer.  MLDC argues, second, that MLDC's bareboat charter of the barge to Cahaba relieves MLDC of liability for the accident.  The plaintiff, Cahaba, and Tiger Tugz opposed the motion, arguing that MLDC's motion is moot with regard to Mr. Colletti's unseaworthiness claim and arguing that because the MDL 300B was not bareboat chartered to Cahaba, there is no basis for MLDC's motion for summary judgment on the negligence claim.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the

governing law.[1]  A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[2]

The party seeking summary judgment has the initial responsibility to inform the court of the basis for its motion and to identify those parts of the record that demonstrate the absence of genuine issues of material fact.[3]  If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[4] All facts and inferences are construed in the light most favorable to the nonmoving party.[5]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's

---

[1]     *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[2]     *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252; *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[3]     *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[4]     *Washburn v. Harvey*, 504 F.3d at 508.

[5]     *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

claim.[6]   The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[7]

### III.   APPLICABLE LAW AND ANALYSIS

#### A.   THE UNSEAWORTHINESS CLAIM

The plaintiff asserted an unseaworthiness claim against MLDC in his first amended complaint.  (Rec. Doc. 10 at ¶ 10).  That claim was reiterated in the plaintiff's third amended complaint.  (Rec. Doc. 77 at ¶ 10).  In his most recent complaint, however, the plaintiff asserted an unseaworthiness complaint only against Tiger Tugz.  (Rec. Doc. 106 at ¶ 12).  Consequently, the plaintiff no longer has an unseaworthiness claim against MLDC.  Accordingly, to the extent that MLDC seeks summary judgment in its favor with regard to the plaintiff's unseaworthiness claim, the motion will be denied as moot.

#### B.   THE NEGLIGENCE CLAIM

MLDC argues that the plaintiff cannot maintain a negligence claim against MLDC under the general maritime law.  Mr. Colletti alleges that he was injured

---

[6]      *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), citing *Celotex Corp. v. Catrett*, 477 U.S. at 325.

[7]      *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

because the coaming on the MDL 300B barge was removed and replaced with a wire handrail that was not as tight as it should have been.  MLDC argues that the coaming was removed and replaced with the wire handrail after the barge was bareboat chartered to Cahaba, relieving MLDC of liability for Mr. Colletti's accident.

"A 'charter' is an arrangement whereby one person (the 'charterer') becomes entitled to the use of the whole of a vessel belonging to another (the 'owner').  There are essentially two types of charters:  the voyage or time charter and the bareboat or demise charter."[8]  A demise or bareboat charter exists when the owner of a vessel completely and exclusively relinquishes possession, command, and navigation of the vessel to the charterer.[9]  A bareboat charter is "tantamount to, though just short of, an outright transfer of ownership."[10]  The charterer is regarded as the owner of the vessel for the period of the charter and is responsible for the vessel's operations.[11]  The bareboat charterer is responsible for the negligence of the crew and the unseaworthiness of the vessel.[12]  Although a bareboat charter does not necessarily

---

[8]     *Walker v. Braus*, 995 F.2d 77, 80 (5th Cir. 1993).

[9]     *Agrico Chemical Co. v. M/V BEN W. MARTIN*, 664 F.2d 85, 91 (5th Cir. 1981).

[10]     *Agrico Chemical Co. v. M/V BEN W. MARTIN*, 664 F.2d at 91, citing *Guzman v. Pichirilo*, 369 U.S. 698, 700 (1962).

[11]     *Agrico Chemical Co. v. M/V BEN W. MARTIN*, 664 F.2d at 91.

[12]     *Forrester v. Ocean Marine Indem. Co.*, 11 F.3d 1213, 1215 (5th Cir. 1993).

free a vessel's owner from all potential liability,[13] it is generally accepted that the owner of a vessel, even after it has bareboat chartered a vessel, "remains liable for injuries caused by defects in the vessel that existed before the commencement of the charter."[14]  Consistently, "[i]n several instances, . . . courts have . . . stated that delivery of the vessel to a bareboat charterer terminates the owner's liability for conditions that arise only thereafter."[15]

MLDC rests its motion for summary judgment on the premise that the barge was bareboat chartered to Cahaba before the coaming was removed, relieving MLDC of liability for the accident.  The threshold question, therefore, is whether the barge was, in fact, bareboat chartered to Cahaba before the coaming was removed.  The validity of an alleged bareboat charter is a question of law but that conclusion is based on subsidiary findings of fact.[16]  A bareboat charter need not be in writing,[17] but the owner of a vessel bears the burden of proving the existence of a bareboat

---

[13]     *Baker v. Raymond Internat'l, Inc.*, 656 F.2d 173, 183 (5th Cir. 1981).

[14]     *Baker v. Raymond*, 656 F.2d at 183.

[15]     *Baker v. Raymond*, 656 F.2d at 183.

[16]     *Complaint of Admiral Towing & Barge Co.*, 767 F.2d 243, 249 (5th Cir. 1985).

[17]     *Torch, Inc. v. Alesich*, 148 F.3d 424, 426 (5th Cir. 1998), citing *Agrico Chemical Co. v. M/V BEN W. MARTIN*, 664 F.2d at 91.

charter.[18]  It is undisputed that MLDC owned the MDL 300B barge at all relevant times.[19]  It is equally undisputed that Cahaba removed the coaming from the barge and replaced it with a wire handrail in October 2009.[20]  Accordingly, to prevail, MLDC must established that it bareboat chartered the barge to Cahaba before the barge was modified.

MLDC is owned 50% by John Ramsay[21] and 50% by Stewart "Buddy" Fuzzell.[22]  Their deposition testimony is consistent with regard to the deal they made between themselves concerning MLDC's barges and the involvement of the barges in the job on which Mr. Colletti was allegedly injured.  Mr. Ramsay testified that MLDC bought twelve barges over a period of several months, including the MDL 300B.[23]  He stated that, at some point, Mr. Fuzzell called him on the phone, said he needed to use six of the barges, and Mr. Ramsay said fine.[24]  Mr. Fuzzell's testimony regarding their deal is virtually identical.  "I called John up and said, John, I need to

---

[18]     *Deal v. A.P. Bell Fish Co.*, 674 F.2d 438, 440-41 (5th Cir. 1982), citing *Guzman v. Pichirilo*, 369 U.S. 698, 700 (1962).

[19]     Rec. Doc. 112-2 at 4; Rec. Doc. 113-3 at 3-4.

[20]     Rec. Doc. 87-4 at 46-48; Rec. Doc. 110-4 at 4-6.

[21]     Rec. Doc. 87-4 at 1.

[22]     Rec. Doc. 110-3 at 2, 5.

[23]     Rec. Doc. 111-2 at 2-3.

[24]     Rec. Doc. 112-1 at 3.

use the barges for Cahaba for the job.  He said fine."[25]  Both testified that any money made on the deal was to be applied to the loans against Mr. Fuzzell's line of credit that were secured by the barges.[26]  But how they characterize that deal is very different.

In his affidavit supporting MLDC's motion for summary judgment, Mr. Ramsay stated that the barge "was under an oral bareboat charter to Cahaba" at the time of the accident,[27] the barge having been chartered to Cahaba in September 2009.[28]  But Mr. Ramsay was unable to provide any details of the charter – he did not know the terms, the length, or the price of the charter.[29]  Mr. Ramsay also stated, in his affidavit, that the barge's coaming had not been modified prior to September 2009 and that the removal of the coaming and the addition of the wire handrail were done "without the participation, consent, or input of MLDC."[30]  At his deposition, speaking as the corporate representative of MLDC, he testified that he did not know, before the

---

[25]     Rec. Doc. 110-3 at 5.

[26]     Rec. Doc. 110-2 at 4-5; Rec. Doc. 110-3 at 7.

[27]     Rec. Doc. 87-4 at ¶ 3.

[28]     Rec. Doc. 87-4 at 2.

[29]     Rec. Doc. 112-1 at 15.

[30]     Rec. Doc. 87-4 at 2.

accident, that the coaming had been removed from the barges.[31]  But Mr. Ramsay also confirmed that both he and Mr. Fuzzell could each act individually on behalf of MLDC without first seeking the other's approval.[32]

Mr. Fuzzell, who is the sole owner of Cahaba[33] as well as one of the two owners of MLDC, testified at his deposition that the barge was not bareboat chartered to Cahaba.[34]  He denied that there was any contract between MLDC and Cahaba regarding the barges.  "There was no contractual obligation.  There was – I just used the barges."[35]  More specifically, he denied that there was a written agreement and also denied that there was an oral agreement "[o]ther than telling him [Mr. Ramsay] that I was going to use them [the barges] . . . ."[36]

Mr. Fuzzell was aware that the coaming was partially removed from the MDL 300B barge by Cahaba.[37]  Although he does not specifically recall Cahaba employee

---

[31]    Rec. Doc. 111-2 at 6.

[32]    Rec. Doc. 110-2 at 8; Rec. Doc. 112-1 at 11, 14.

[33]    Rec. Doc. 110-3 at 2.

[34]    Rec. Doc. 110-3 at 5.

[35]    Rec. Doc. 110-3 at 11.

[36]    Rec. Doc. 111-1 at 3.

[37]    Rec. Doc. 110-3 at 9-10.

Leonard Scarborough asking for his permission to remove the coaming,[38] he testified that he could not imagine Mr. Scarborough removing the coaming without first obtaining his approval.[39]  Indeed, he testified that if Mr. Scarborough had asked for his authorization to remove the coaming, he would have authorized that work.[40]  He also explained that he should have called Mr. Ramsay and asked for his permission before authorizing the removal of the coaming from the barge, but he did not do so.[41]

Mr. Fuzzell's testimony indicates that he, an owner of MLDC, was aware of – and likely authorized – the removal of the coaming.  His personal knowledge must be attributed to MLDC.  Business entities such as corporations necessarily operate through individuals.  Accordingly, "the privity and knowledge of individuals at a certain level of responsibility must be deemed the privity and knowledge of the organization."[42]  A corporation "is charged with the knowledge of any of its managing agents who have authority over the sphere of activities in question."[43]  Although Mr.

---

[38]     Rec. Doc. 112-2 at 7.

[39]     Rec. Doc. 110-3 at 10-11.

[40]     Rec. Doc. 111-1 at 6.

[41]     Rec. Doc. 110-3 at 10.

[42]     *In re Signal Internat'l, LLC*, 579 F.3d 478, 496 (5th Cir. 2009).

[43]     *In re Signal*, 579 F.3d at 496.

Fuzzell initially denied being MLDC's manager,[44] he then admitted that he and Mr. Ramsay equally share management of the company.[45]  MLDC had no employees[46] and all actions of that entity were taken either by Mr. Fuzzell or Mr. Ramsay.  In such a situation, Mr. Fuzzell's knowledge must be attributed to MLDC.

Mr. Fuzzell's testimony also indicates that, since he believed Mr. Ramsay should have been consulted regarding the removal of the coaming, MLDC retained control over the barge, although it is unclear whether Mr. Fuzzell authorized the removal of the coaming in his capacity as an owner of MLDC or as the owner of Cahaba.

In its reply brief, MLDC suggested that this court closely review the Fifth Circuit's decision in *Torch Incorporated v. Alesich*, 148 F.3d 424 (5th Cir. 1998).  In *Torch*, a vessel was owned by Alesich & Company.  Raymond Alesich was the president and principal stockholder of that company and also an employee of Torch. The issue presented was whether the vessel was bareboat chartered by Alesich & Company to Torch.  The difference between that case and this one is that there was no conflicting testimony by the owners of the vessel as to whether a bareboat charter

---

[44]     Rec. Doc. 110-3 at 2, 5.

[45]     Rec. Doc. 110-3 at 2.

[46]     Rec. Doc. 110-2 at 7.

had been effected.  Additionally, Torch actually paid Alesich & Company a day rate for the use of the vessel.  There is no evidence in this case of any payment made by Cahaba to MLDC for the use of the MDL 300B barge.  Furthermore, in *Torch*, the court found that when Alesich was serving as captain of the vessel, he was working as a Torch employee and not as an individual or as an employee of Alesich & Company.  There also is no indication that he had an ownership interest in Torch. The evidence presented in this case is not so clear cut.  On the record as it currently exists, it is impossible to determine whether Mr. Fuzzell was acting on behalf of MLDC or on behalf of Cahaba when he authorized modifications to the barge or at any other times relevant to the issues presented.

At oral argument, MLDC's counsel suggested that the instant motion should be decided in accordance with the ruling in *St. Paul Fire & Marine Ins. Co. v. Vest Transportation Co., Inc.*, 500 F.Supp. 1365 (N.D. Miss. 1980), *aff'd*, 666 F.2d 932 (5th Cir. 1982).  In that case, Vest and Victory were sister companies, both of which were owned by Carl and Ora Vest.  An issue presented was whether Vest or Victory owned a barge that impacted the Mississippi River bridge at Vicksburg and sank in the river.  After noting that there was "no evidence that an express agreement existed between Vest and Victory of charter or other arrangement for Victory's use of the barge," the district court went on to say that "a charter party may be implied from

-13-

circumstances concerning the actual possession and use of a vessel."[47]  MLDC argues that this statement should control, and a bareboat charter should be implied from the circumstances of this case even though the two members of MLDC disagree as to the intent of their agreement concerning the use of the MDL 300B barge.

*St. Paul Fire* can easily be distinguished.  First, in *St. Paul Fire*, it was stipulated that the sinking of the barge was caused by the fault of Victory's vessel M/V JOHNNY DAN.  There was no allegation, as in the instant case, that a condition of the barge itself cause the accident that led to the lawsuit.

Second, in *St. Paul Fire*, Vest and Victory both contended that Victory owned the barge or, alternatively, that Victory was the bareboat charterer of the barge, or, alternatively, that Vest and Victory were engaged in a joint enterprise.  There was no dispute among the owners of the companies as to the control of the barge.

Third, in *St. Paul Fire*, "Victory at all times exercised sole control and command over the barge."[48]  The evidence presented in this case does not support the conclusion that Cahaba exercised sole control and command over the MDL 300B barge at all relevant times.  To the contrary, there is evidence that Mr. Fuzzell – who was a co-owner of MLDC as well as the owner of Cahaba – knew about and

---

[47]      *St. Paul Fire & Marine Ins. Co. v. Vest Transportation Co., Inc.*, 500 F.Supp. 1365, 1372 (N.D. Miss. 1980), *aff'd*, 666 F.2d 932 (5th Cir. 1982).

[48]      *St. Paul Fire v. Vest*, 500 F.Supp. at 1372.

authorized the modification of the barge.  There is a genuine factual dispute as to whether he was acting solely on behalf of Cahaba or also on behalf of MLDC when he authorized the removal of the barge's coaming.

In reviewing summary judgment evidence, all reasonable inferences must be drawn in the light most favorable to the nonmoving party, i.e., in this case, in the light most favorable to the opponents of MLDC's motion.  Since the Court cannot conclude that Mr. Fuzzell authorized the removal of the coaming while acting as an owner of MLDC and not while solely acting as the owner of Cahaba, the Court cannot conclude Cahaba had sole control over the barge at all material times, and the existence of a bareboat charter cannot be inferred from the facts of this case.

MLDC has the burden of establishing that there was a bareboat charter from MLDC to Cahaba.  MLDC has not satisfied that burden.  The conflicting testimony of Mr. Ramsay and Mr. Fuzzell on the characterization of the relationship between MLDC and Cahaba relating to the MDL 300B barge creates a genuine issue of material fact that precludes summary judgment in favor of MLDC.  Additionally, there is a genuine issue of material fact concerning the capacity in which Mr. Fuzzell was acting when he authorized modification of the barge.  Finally, the existence of a bareboat charter cannot be inferred from the circumstances concerning the

possession and use of the MDL 300B barge.  Accordingly, the motion for summary judgment must be denied.

In opposition to the motion for summary judgment, Tiger Tugz argued that MLDC and Cahaba entered into a joint venture.  Whether there was or was not a joint venture between those entities is not material to the motion for summary judgment.  Accordingly, that issue will not be addressed further in this context.

## CONCLUSION

The plaintiff amended his petition to strike the unseaworthiness claim he earlier asserted against MLDC.  Therefore, to the extent that MLDC's motion for summary judgment seeks dismissal of the plaintiff's unseaworthiness claim against MLDC, the motion is DENIED AS MOOT.

The plaintiff also asserted a general maritime law negligence claim against MLDC.  With regard to that claim, MLDC's motion for summary judgment is premised upon the contention that the barge on which Mr. Colletti was injured was owned by MLDC but bareboat chartered to Cahaba before the coaming was modified.  Genuine factual disputes preclude a finding that a bareboat charter existed.  Consequently, MLDC has failed to satisfy its burden of proving that a bareboat charter existed.  Therefore, to the extent that MLDC's motion for summary judgment

seeks dismissal of the plaintiff's negligence claim against it, the motion (Rec. Doc. 87) is DENIED.

Signed at Lafayette, Louisiana, this 16th day of December 2011.


Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)